**In the Matter of the ESTATE OF John Wilfred NIEMIEC, Deceased.**

**George H. NIEMIEC, et al., Appellants-Plaintiffs,**

v.

**WESTERN STATE BANK and J. Robert Niemiec, Appellees-Defendants.**

No. 3–481A114.

Court of Appeals of Indiana, Fourth District.

May 25, 1982.

Rehearing Denied June 17, 1982.

Robert W. Mysliwiec, South Bend, for appellants-plaintiffs.

Daniel J. Harrigan, Bayliff Harrigan Cord Maugans & Russell, P. C., Kokomo, David L. Matthews, Matthews-Petsche & Associates, P. C., South Bend, for appellee-defendant Robert J. Niemiec.

Frederick C. Boynton, Doran, Manion, Boynton, Kamm & Esmont, South Bend, for appellee-defendant Western State Bank.

CONOVER, Judge.

George H. Niemiec and other heirs at law (heirs) of John Wilfred Niemiec, deceased, (John) appeal the entry of summary judgment in favor of Western State Bank (Bank) and J. Robert Niemiec (Robert) in their proceeding to contest John's will.

We reverse.

### ISSUES

While several issues were properly raised and briefed by the parties, we need discuss only the first one, namely, whether the trial court erred in issuing a protective order which prohibited the taking of a deposition from John's former attorney for submission to the trial court in summary judgment proceedings.

### FACTS

John died July 31, 1979. His 1978 will was admitted to probate the next day. It was one page in length, named the Bank executor, and designated Robert as sole beneficiary.

John never married and died at age 91. He had been an attorney, and president, director and majority shareholder of the Bank. Robert, decedent's nephew, had worked at the bank for a number of years. He became cashier in 1974, when John's brother, Henry, died, and president after John's death. The heirs are John's nieces and nephews and their children. They were on good terms with John at all times.

Their complaint alleges John was of unsound mind and under the influence of drugs and medication at the time the will in question was executed. Additionally, it alleges the will was not duly executed because of undue influence, duress, fraud, coercion or mistake.

In 1977, John became upset with Robert's handling of his deceased brother Henry's estate on behalf of the Bank, as executor, and retained attorney R. Floyd Searer to clear up the matter. He was particularly upset with attorney David L. Matthews whom Robert had hired to process Henry's estate. Searer had represented John previously, and also had represented the Bank.

For several years John and attorney Searer had been discussing the establishment of a trust for the education of John's nieces' and nephews' children. Searer sent John a memo on educational trusts in 1977.

In 1978, Robert testified, John had asked him to have a will prepared leaving his entire estate to Robert. He contacted attorney Matthews who prepared the document. On November 15th of that year, John came to the Bank and executed that will in the presence of two witnesses Robert had obtained upon John's instructions who were not bank employees.

On July 19, 1979, at John's request, Searer went to John's house and was given instructions to prepare a will containing an educational trust. The following day, Searer mailed John the will he had prepared. It provided for John's burial, payment of death taxes, a bequest to his church and a trust for his nieces and nephews, the children of his deceased brothers and sisters. The proceeds were to be used for the education of the beneficiaries' children. The Bank and one Mucha, John's friend, were to serve as co-executors and co-trustees.

Robert testified he was in John's house the next day and John gave him the will Searer had prepared. John said he had been angry with Robert for trying to put him in a nursing home, apologized for having had it prepared, and gave it to Robert saying he wanted him to have it.

John died July 31, 1979. The 1978 will was admitted to probate the next day, and this proceeding was filed seven days later.

The Bank and Robert filed a motion for summary judgment. After that motion was filed, the heirs proposed to take the deposition of attorney Searer. Searer's firm had initially represented the heirs in this litigation, but it requested and was granted leave to withdraw as counsel prior to service of notice of the taking of Searer's deposition.

Three days after the Searer deposition notice was served, the Bank and Robert filed a motion for protective order with the court asking the entry of an order "preventing the taking of the deposition of R. Floyd Searer." The grounds stated for such request were:

a) Until recently, Searer had represented the Bank as its attorney;

b) The taking of the deposition would violate Canon 4, DR 4–101 of the Code of Professional Responsibility as to the Bank;

c) Such taking would violate Canon 5, DR 5–102 of the Code because his firm had undertaken representation of the heirs and this employment "will impair his professional judgment and responsibility of confidentiality of privileged communications to his previous client," the Bank.

They also erroneously alleged violation of Canon 5, DR 5–102 of the Code requiring withdrawal from the case where counsel for a party is to testify. Searer's firm had already withdrawn, as noted above.

The trial court entered an order granting the motion for protective order on the grounds it would not be proper to permit attorney Searer's deposition to be taken in connection with the lawsuit, and because the heirs had failed to show any substantial reason to take Searer's deposition.

The order stated, in part:

"[T]hat pursuant to T.R. 26(C), plaintiffs are hereby prevented from taking the deposition of R. Floyd Searer, and the deposition of R. Floyd Searer is not to be had."

Seven months after summary judgment was entered, the trial court removed the Bank as executor and appointed a special administrator.

### DISCUSSION AND DECISION

Ind.Code 34–1–14–5, reads in part as follows:

"The following persons shall not be competent witnesses: ...

Third. Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases...."

DR 4–101 reads in part:

"(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure...."

## PROHIBITING ATTORNEY'S DEPOSITION

The trial court's protective order prohibited the taking of attorney Searer's deposition because the Bank, his former client, was a party to the litigation. We note in passing, the Bank was ordered removed as executor and a special administrator appointed after summary judgment had been entered. The Bank's removal eliminates the sole ground upon which the protective order was granted. The question remains, however, whether the protective order was proper at the time it was entered. We conclude it was improvidently issued.

Ind. Rules of Procedure, Trial Rule 30 reads, in part:

"(A) When depositions may be taken.

After commencement of the action, *any party* may take the testimony of *any person*, including a party, by deposition upon oral examination....

The attendance of witnesses may be compelled by the use of subpoena as provided in Rule 45...."

(Emphasis supplied.)

Clearly, the rule makes no special provisions or exceptions for attorneys.

■ Thus, the heirs were authorized to take attorney Searer's deposition, even though the Bank at the time was a party to the litigation. Ind.Code 34–1–14–5 does not prohibit the taking of an attorney's deposition. It prohibits an attorney from testifying during his deposition as to confidential communications and advice given to clients.

■ It is apparent the matter at issue involved John's affairs not the Bank's. Had incidental questions been asked involving the Bank's confidential communications or advice given it by Searer, an appropriate objection by counsel, or an assertion of privilege by Searer himself would have protected the Bank. Where an attorney's testimony can be safely separated as to privileged and unprivileged matters, the privileged matters only will be excluded. 81 Am. Jur.2d *Witnesses* § 195 (1976).

■ An objection to the competency of a witness to testify at all is properly overruled where the witness is competent to testify as to some matters. *Citizens State Bank v. Kelley*, (1959) 130 Ind.App. 376, 162 N.E.2d 322.

The rule has been correctly stated as follows:

"The courts have generally taken the view that the rule protecting communications between attorney and client does not apply to facts not communicated to the attorney by the client, but with which he became acquainted while engaged as attorney for that client, and that an attorney called as a witness is bound to testify as to any matter which comes to his knowledge in any other way than through confidential communications from his client."

81 Am.Jur.2d *Witnesses* § 199 (1976).

The heirs had a right to take attorney Searer's deposition and to have the same considered prior to the trial court's ruling on the summary judgment question. T.R. 26 makes no provision requiring them to show cause for taking Searer's deposition. On the contrary, the Bank and Robert were required to show good cause for the issuance of the protective order. This, they failed to do. The trial court erred in granting a protective order which prohibited the taking of attorney Searer's testimony.

This cause is reversed and summary judgment ordered set aside. The cause is remanded to the trial court with instructions to overrule the appellees' motion for protective order, and for further proceedings consistent with this opinion.

MILLER, P. J., and YOUNG, J., concur.