BLASCHE ET AL. *v.* HIMELICK ET AL., ADMINISTRATORS.

[No. 19,766. Filed September 27, 1965. Rehearing denied November 4, 1965. Transfer denied February 1, 1967.]

*Hubert Wickens* and *Frank I. Hamilton,* both of Greensburg, and *Fauvre, Dongus, Ging & Gemmer,* of counsel, of Indianapolis, all for appellants.

*James Hooper, Sr., Virgil J. McCarty, James V. Donadio, R. Stanley Lawton* and *James A. O'Neal* and *Ice, Miller, Donadio & Ryan,* of counsel, all of Indianapolis, for appellees.

CARSON, J.—This case comes to us on appeal from a judgment of the Franklin Circuit Court. The issues were tried before the court without a jury and were formed by the appellants' complaint of one paragraph attacking the validity of a certain deed by reason of fraud and undue influence and the answer of the appellee-defendant under Supreme Court rule 1-3. The plaintiffs below, appellants herein, claimed to be heirs of one Robert Viner the grantor in the deed in question. The defendant E. Ralph Himlick died after the case was filed and his son John H. Himelick as administrator of the estate of E. Ralph Himelick was susbstituted as a party defendant.

The court below entered a general judgment giving the plaintiffs nothing by reason of their amended complaint. The plaintiff-appellants filed their motion for new trial setting out that the decision of the court was not sustained by sufficient evidence and that the decision of the court is contrary to law. The overruling of the motion for new trial is assigned as error and brings the case before us.

As has been pointed out many times an assignment that the decision of the court is not sustained by sufficient evidence presents no question to us for review when the appeal is based on a negative judgment.

The assignment that the decision of the court is contrary to law does present a question for our review under the rule laid down in *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669. In order to understand the issues raised by the pleadings in this case it is necessary that we abstract certain pertinent allegations of the complaint and the answer. The plaintiffs allege that they were first cousins of Robert Viner and that he was the owner in fee simple of certain real estate described in the complaint; that on the date of the

execution of the deed in question and for more than six months prior thereto he was advanced in age, in feeble health in both mind and body and easily susceptible to the influence, acts and persuasion of others; that he was of unsound mind and incapable of executing a valid deed; that the defendant E. Ralph Himelick was a duly licensed and practicing attorney associated with his son John H. Himelick. The complaint further alleges that said attorneys were the attorneys and confidential advisors for Robert Viner at the time of the execution of the deed; that as a part of other transactions the defendant E. Ralph Himelick fraudulently and with the exercise of undue influence procured a warranty deed to the real estate in question on the 28th day of May, 1951, from Robert Viner conveying said real estate to E. Ralph Himelick; that the defendants E. Ralph Himelick and John H. Himelick knew the weak and feeble condition of Robert Viner and the defendant E. Ralph Himelick corruptly contrived and intended to defraud Robert Viner out of his real estate and that the defendant and his son used their position as attorneys and personal advisors to exercise continuous, persistent and undue influence over Robert Viner; that E. Ralph Himelick did not pay nor promise to pay and has not paid any consideration whatsoever for the conveyance; that Robert Viner died intestate on the 15th day of August, 1951, leaving these plaintiffs as his sole and only heirs at law; that the defendant claims an interest adverse to the plaintiffs; that they disaffirmed the deed and demanded a re-conveyance of the real estate and offered to pay any amount owed to, or paid by the defendant E. Ralph Himelick in consideration of said conveyance but that said offers were refused and plaintiffs conclude their complaint with a prayer that the claim of the defendants be declared null and void and that the plaintiff's title to the real estate be quieted.

The defendant John H. Himelick as administrator of the estate of E. Ralph Himelick filed an answer denying all the

allegations in the complaint under the provisions of Supreme Court rule 1-3.

In the argument portion of appellant's brief only one proposition is presented namely that the decision of the court is contrary to law. The appellee has assigned cross errors and in the argument portion of appellee's brief the contention is made that the plaintiffs below, appellants herein, failed to prove their alleged relationship to the deceased grantor Robert Viner. The appellees attack the right of the plaintiffs below to testify to their relationship to the grantor Robert Viner and also the admissibility of certain evidence offered in support of such relationship.

We shall first discuss the assignment of the appellant and then deal with the cross errors assigned by the appellees.

The case presents one main question in our opinion namely, whether or not as a matter of law the action of the decedent constituted undue influence. We feel that this question must be answered in the affirmative.

From the Texas Civil Court of Appeals in an opinion written by Chief Justice McClendon in the case of *Bell* v. *Ramirez* (1927), 299 S. W. 655, 658, we find the following language:

> "[6] The well-established rule that the relation of attorney and client is one of uberrima fides rests upon the highest considerations of public policy, and agreements between them in the course of the relation are prima facie presumed to be fradulent, the burden to show them otherwise being cast, as a matter of law, upon the attorney."

Attention is also called to the language of Justice Nelson in the case of *Stockton* v. *Ford* (1850), 52 U. S. 232, 247:

> "There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them

in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it."

We quote the following language from 98 A. L. R. 2d 1235:

"It is a basic principle of professional conduct that an attorney must faithfully, honestly, and consistently represent the interest and protect the rights of his client, and that he is bound to discharge his duties to his client with the strictest fidelity, to observe the highest and utmost good faith, and to inform his client promptly of any known information important to him. These duties apparently apply to situations where an attorney has personal transactions with the client, since the courts will scrutinize such dealings closely, *to the extent of attaching a presumption of fraud or undue influence where an attorney takes a conveyance from a client, and of establishing a rebuttable presumption of undue influence where a lawyer is designated as one of the chief beneficiaries of a will that he has drafted for a client."* (Our emphasis)

We note in examining this very complete annotation that various courts have criticized an attorney for including himself as devisee in a will, among these being the courts in Nebraska, Pennsylvania, Wisconsin, New Jersey, California and Colorado. In the case of *Slayback* v. *Witt et al.* (1898), 151 Ind. 376, 50 N. E. 389, the court had before it the question of undue influence where a deed was involved in which real estate had been conveyed to certain heirs at the exclusion of others and our Supreme Court in discussing the question of fiduciary relationship and the requirement that the fiduciary establish the absence of undue influence said at page 386:

"This duty most frequently arises where the relations between the parties are those of attorney and client; . . ."

In the case before us we do not think that the evidence introduced met the burden cast upon the defendant to nega-

tive the presumption of undue influence and it is our opinion therefore that the decision of the trial court was contrary to law and should be reversed.

In connection with the cross errors we conclude that two basic propositions are involved; first, the competency of the plaintiffs to testify concerning their alleged relationship to the deceased grantor Robert Viner, and second, the admissibility of the certificates of baptism and admission records from the children's home in Cincinnati.

As to the first question we conclude that the plaintiffs were competent witnesses and were not barred by reason of the provisions of the so called dead man's statute being § 2-1716, Burns' 1946 Replacement, which reads as follows:

"In all suits by or against heirs or devisees, founded on a contract with, or demand against, the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor."

The question of competency of witnesses under the provisions of the above statute has been examined and passed on by our Supreme Court and by this court in a number of cases. There are several exceptions to the strict application of the statute. The earliest case which we have been able to find is *Clouse* v. *Elliott et al.* (1880), 71 Ind. 302. In that case the witness was an heir of the decedent and one of the grantors in the deed through which the appellees derived their title. The appellant objected to the witness testifying on the grounds that naming the heirs of the decedent was testifying to matters occurring prior to the death of the ancestor. In answering this objection our Supreme Court said at page 303:

"There is no force in the objection. No one can have heirs in his lifetime; there may be heirs apparent, but not heirs. The question of heirship invariably arises after death."

In the recent case of *Citizens State Bank, Ex'tr. etc.* v. *Kelley* (1959), 130 Ind. App. 376, 162 N. E. 2d 332, the testimony of the appellee, a child of the decedent was offered. Objection was made that she was not competent to testify to anything that happened prior to the death of the decedent. In passing upon the objection this court said:

> "As appellants state, where the objection is to the right of the witness to testify at all, the question for the court to pass upon is not as to the competency of the testimony, but as to the competency of the witness himself, citing *the State, ex rel. Steigerwald* v. *Thomas* (1887), 111 Ind. 515, 13 N. E. 35. See also *State* v. *Hamer* (1936), 211 Ind. 570, 582, 199 N. E. 589.
>
> An objection to the competency of a witness to testify at all as to any matter that occurred during the lifetime of decedent is properly overruled where the witness is competent to testify as to some matters."

We conclude therefore that the appellants were competent witnesses. In so deciding we do not invade the province of the trier of fact to determine the question of credibility or the weight to be given their testimony.

The second objection dealing with the certificates of baptism and the admission records from the children's home in Cincinnati, Ohio, is not in our opinion well taken. The purpose for which such records might be admitted should be well limited by the trial court to strictly the facts shown by such records and not to prove issuable facts for which they would be objectionable under the hearsay rule.

There is a distinction between the admissibility of a record for such facts as it may show on its face, and its probative value with respect to the issues before the court, whether or not the exhibit tends to prove or disprove such issues, its materiality, its relevancy or subjects upon which the court must pass if proper. § 547 Jones Evidence.

For the reasons herein stated the decision of the trial court is reversed with instructions that the motion for new trial be granted.

Judgment reversed.

Prime, P. J., and Faulconer, J., concur.*

Wickens, J., not participating.

### ON PETITION FOR REHEARING

CARSON, J.—We have examined the appellee's petition for rehearing and the appellant's brief in opposition to the petition for rehearing.

In our opinion none of the reasons stated in the petition for rehearing require any further consideration by the court. We do feel, however, that appellee has misconstrued the language on page 54 of *Castle* v. *Kroeger* (1942), 111 Ind. App. 43, 54, 39 N. E. 2d 459 where we find the following statement:

> ". . . the burden to go forward shifted and it was obligatory upon him for whose use and benefit the conveyance was made to establish that he acted in good faith, that he took no advantage of his superior position and influence, . . ."

For the reasons above stated the petition for rehearing is denied.

Prime, P. J., and Faulconer, J., concur.

Wickens, J., not participating.

NOTE.—Reported in 210 N. E. 2d 378. Rehearing denied 211 N. E. 2d 197.

---

*While Judge Martin participated in the hearing of oral argument and a conference of the judges above named, he was not present at the time of, and did not participate in, the adoption of this opinion.